### HILDEBRANDT v. HILDEBRANDT.

DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.

> In a suit by a husband for divorce on the ground of extreme cruelty, the decree of the court below in favor of the husband, *held*, sustained by the record.

Appeal from Wayne; Mandell (Henry A.), J.    Submitted April 20, 1923.    (Docket No. 102.)    Decided June 4, 1923.

Bill by Edward A. Hildebrandt against Margaret Hildebrandt for a divorce.    From a decree for plaintiff, defendant appeals.    Affirmed.

*Raymond E. Van Syckle,* for plaintiff.

*James H. Pound,* for defendant.

SHARPE, J.    Defendant appeals from a decree granted plaintiff in a suit for divorce.    The parties were married in 1908.    Plaintiff was then a widower,

having two small children six and four years old. His accumulations amounted to about $4,500. Defendant had been employed in a cigar factory for about eight years. She had saved but a few dollars. The charge was extreme cruelty. At the time of the marriage, plaintiff was proprietor of a saloon in Detroit and also a salesman for a wholesale liquor firm. He continued in such business and employment until the prohibition amendment became effective and after that conducted "a soft drink parlor." It is his claim, supported by considerable proof, that soon after their marriage the defendant began drinking intoxicating liquor to excess and while under its influence, and also at other times, had been guilty of acts of misconduct amounting to extreme cruelty as defined by this court. Defendant, as a witness, at first said, "I never drank any liquor." On her attention being called to a particular occasion and asked if she was not drunk, she said, "No. I had a couple of drinks. I didn't drink any more than the rest, or anybody else." A number of witnesses, some of them bartenders, testified positively that she was frequently intoxicated in the bar room and took bottles of liquor from the store room to the living apartments in the same building. Habitual drunkenness, discussed by defendant's counsel at length, was not charged. Defendant, by way of cross-bill, charges extreme cruelty on the part of the plaintiff. The testimony of several witnesses called by her tends to support this claim. The trial court, after making an unsuccessful effort to effect a reconciliation, concluded that the plaintiff had established the charges made by him by a preponderance of the proof. He dismissed the cross-bill and granted plaintiff a decree.

We seldom have a record containing so much contradictory testimony. If that of plaintiff and his

witnesses is to be believed, defendant's conduct fully justified the decree made. On the other hand, if defendant and her witnesses told the truth, she is entitled to a decree. The trial court saw and heard the witnesses. The finding made by him, while not controlling, is entitled to great respect. The testimony of certain witnesses impresses us with the stamp of truth. We will refer to but one incident. Mary A. Elwart, a niece of plaintiff, an employee at the Children's Free Hospital and a frequent visitor at their home, testified that defendant came home from her sister's one night much intoxicated and bringing some company with her; that plaintiff left the home and after the company had gone defendant got a revolver, put it under her pillow and went to bed, saying, "When he gets here, I will shoot him like a dog;" that when plaintiff returned, defendant would not unlock the door for him, but witness did; that plaintiff took the revolver from defendant; that a quarrel followed in which defendant indulged in much profanity; that—

"she took the cut glass and she started smashing it all around on the floor. * * * She broke up all the cut glass she had in the house, vases and dishes and everything that she had;"

that plaintiff called a policeman and he got defendant quieted and she went to bed; that defendant picked up her clothes the next morning and went away. Frank J. Lachijewski, a law clerk, testified that he was in the living rooms of the parties the morning that defendant left and saw—

"drawers of different dressers were open and clothes and everything were thrown on the floor. There was a big bushel basket standing there, with all the dishes all broken up. The basket was full of that."

Defendant testified as to this incident:

"And somehow or other, why, I don't know, he shoved me and a piece of cut glass fell down somehow I don't know.     We got in an argument and he hit me and I threw some of it at him."

Plaintiff's daughter, Josephine, aged 17, testified to many acts of misconduct on the part of the defendant. In part they were denied, and in part an effort, not very satisfactory, was made to explain them.     After a careful reading of the entire record, we are persuaded that the conclusion reached by the trial court should not be disturbed.

No claim is made that the provision in the decree for allowance and alimony to defendant is not just and equitable.     It is, therefore, affirmed, without costs to either party.

FELLOWS, MCDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.     WIEST, C. J., did not sit.